IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ARTHUR STIENER,<br><br>              Plaintiff,<br><br>    v.<br><br>OFFICER J. ROBINSON, et al.,<br><br>              Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action<br>No. 18-8765 (JBS-JS)<br><br>**OPINION** |

APPEARANCES:

Arthur Stiener, Plaintiff Pro Se
7 Serviss Ave
East Brunswick, New Jersey 08816

**SIMANDLE, District Judge:**

I. **INTRODUCTION**

   Before the Court is Plaintiff Arthur Stiener's ("Plaintiff"), submission of a civil rights complaint. [Docket Entry 1]. At this time, the Court must review the complaint, pursuant to 28 U.S.C. § 1915 to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the Court concludes that the complaint will proceed in part.

## II. BACKGROUND

Plaintiff's complaint alleges a conspiracy consisting of extortion and assault during his confinement at Bayside State Prison, New Jersey. [Docket Entry 1]. The following factual allegations are taken from the complaint and are accepted for purposes of this screening only. The Court has made no findings as to the truth of Plaintiff's allegations.

Plaintiff's incarceration at Bayside began in 2015. He began noticing after his arrival that several cells on his unit would remain unlocked during "lockdown" periods and that the inmates would be free to move about the unit. [*Id.* at 8]. He states that many of these inmates were gang members. [*Id.* at 8-9]. Plaintiff alleges these inmates told him on one occasion that they "'got the door popped'" and would "'go easy'" on him the first time because he was new to Bayside. [*Id.* at 9]. Plaintiff further alleges that they proceeded to explain to him "'the way it is here.'" [*Id.*]. "This was to include payment to use the phone, and commissary on demand. Plaintiff declined to pay the runners anything and essentially told them he was prepared to use violence to protect himself and his property." [*Id.*]. "Plaintiff consciously restricted his activity outside his cell to movement he considered necessary to avoid institutional infractions, *i.e.*, work (not voluntary), shower, meals, and phone usage when he could pay to use it." [*Id.*].

Plaintiff asserts he observed Officer Robinson open cell doors for the inmates and laugh with them after they took commissary items from other inmates' cells. [*Id.*].

On approximately November 23, 2015, Plaintiff was waiting to call his family when Officer Robinson asked him what he was doing. [*Id.*]. Plaintiff explained that he was waiting to use the phone, and Officer Robinson told Plaintiff to go downstairs. [*Id.*]. Plaintiff refused, asserting that he would miss his chance to use the phone if he left. [*Id.*]. Officer Robinson then spat on Plaintiff's shoe in what Plaintiff believed to be an attempt to provoke Plaintiff into a confrontation. [*Id.*].

Shortly after this incident, Plaintiff's cell was searched by a friend of Officer Robinson. [*Id.* at 9-10]. The officer claimed to have found a finger of a blue glove, allegedly containing a controlled dangerous substance, on Plaintiff's bed in plain view. [*Id.*]. Before any testing was completed, officers were claiming the substance was heroin. [*Id.*]. Plaintiff was taken to medical and ordered to produce a urine sample. [*Id.*]. Plaintiff produced three clean urine samples over the next two days. [*Id.*]. Special Investigations Division ("SID") Officer Gardner interviewed Plaintiff on the third day and informed him that the substance tested positive for heroin. [*Id.*]. Plaintiff told Officer Gardner about the inmate runners and Officer Robinson and how he believed the substance was planted in his

cell as retaliation because he had refused to participate in their "extortion system." [*Id.*].

Plaintiff states that SID investigated and two or three of the inmate runners were moved to different prisons as a result of his conversation with Officer Gardner. [*Id.*]. Other inmates were moved to different units within Bayside and lost their runner position. [*Id.*]. "Then Officer Gardner listened to plaintiff's pre-recorded collect phone calls. Officer Gardner discussed the former and also specifically mentioned to plaintiff that he listened to one of his phone calls and that during the call, he could hear another inmate demanding money for use of the phone." [*Id.*]. Plaintiff asked Officer Gardner for "keep separate" orders to be placed in his file to keep him away from the inmates involved in the scheme as well as Officer Robinson. "Officer Gardner told plaintiff that he would 'take care of it.'" [*Id.*].

Plaintiff's disciplinary hearing for possession of the alleged heroin occurred on approximately December 3, 2015. [*Id.*]. Officer Robinson escorted him to the hearing along with an Unknown Sergeant and Unknown Officers 1 & 2. [*Id.* at 10-11]. The hearing officer, who was filling in for the regular hearing officer, decided to postpone the hearing after Plaintiff expressed discomfort revealing his discussions with SID about Officer Robinson in front of Officer Robinson. [*Id.* at 11].

Officer Robinson then "jerked" Plaintiff's handcuffed arm towards the door. [*Id.*]. Plaintiff asked to speak with the hearing officer privately as he was afraid to leave with Officer Robinson. [*Id.*]. Plaintiff alleges that Officer Robinson then struck him in the face with a closed fist three times. [*Id.*]. The sergeant intervened by yelling at Officer Robinson to stop. [*Id.*]. Officer Dick pulled the hearing officer out of the room, and the unknown officers pulled Plaintiff out of the hearing room. [*Id.*].

Plaintiff began requesting to see SID about the assault on his way back to the medical unit when the sergeant and officers escorting him "wrenched" Plaintiff's arms behind his back. [*Id.*]. The sergeant threatened to "call a 'code' and beat him worse if he didn't stop calling out." [*Id.*]. When he got back to segregation, Plaintiff requested medical attention and SID. [*Id.*]. The sergeant came to Plaintiff's cell about thirty minutes later and said he would let Plaintiff see medical staff if Plaintiff would stop talking about being assaulted. [*Id.*]. Plaintiff objected but said he would not talk to SID if the sergeant would let him talk to medical staff. [*Id.* at 11-12]. The sergeant allowed Plaintiff to see medical staff about back pain resulting from his mattress. [*Id.* at 12]. Officer Probst, the medical officer, told Plaintiff that "'we'll finish what the other guys started'" if Plaintiff attempted to ask for medical

5

attention for anything other than the mattress-related injury. [*Id.*]. When in medical, Plaintiff attempted to tell a lieutenant and rookie officer about the assault. [*Id.*]. He also told mental health staff about the assault on two occasions. [*Id.*].

Plaintiff's disciplinary hearing took place on or about December 7, 2015 with Hearing Officer Ralph. [*Id.*]. Plaintiff states he was not permitted to present any evidence or other defense to the charges. [*Id.*]. Officer Ralph found him guilty of the charge and sentenced him to 180 days in administrative segregation and 180 days loss of commutation time. [*Id.*]. Plaintiff was held in administrative segregation in New Jersey State Prison for approximately 160 days before being transferred back to Bayside in May 2016.[1] [*Id.*].

When Plaintiff returned to Bayside, a corrections officer, Mrs. Z, identified Plaintiff as the one who "'ratted out Rob.'" [*Id.* at 12-13]. She warned the unit runners to stay away from Plaintiff's cell or they would be fired. [*Id.* at 13]. On May 5, 2016, Plaintiff saw Office Robinson on his unit and called his family "and advised that he was in fear for his safety from Officer Robinson or his co-workers/friends in the facility."

---

[1] The Court presumes the statement that Plaintiff's transfer from New Jersey State Prison back to Bayside occurred in "May 2015" was an error as Plaintiff previously stated that he entered New Jersey State Prison to serve out his administrative segregation sentence in December 2015.

[*Id.*]. Later that day, Plaintiff was moved to a different unit within the prison where Officer Robinson searched his cell. [*Id.*]. After Plaintiff's cellmate left for the dayroom, Officer Robinson and Officer Doughtery assaulted Plaintiff. [*Id.*]. Plaintiff states he was handcuffed at the time. [*Id.*]. He was placed in medical segregation before being transferred to Southern State Correctional Facility ("SSCF"). [*Id.*].

Plaintiff received medical attention upon arriving at SSCF on May 6, 2016. [*Id.*]. SID Officer Gardner interviewed Plaintiff and told him that Plaintiff would not be charged with a "street charge" for assault. [*Id.*]. Plaintiff stated that he wanted to press charges against the officers, but, according to Plaintiff, Officer Gardner said that they'd "'handle this in-house.'" [*Id.*]. Plaintiff tried to give a statement but Officer Gardner purportedly stated that Plaintiff looked "'pretty banged up'" and he would be back later. [*Id.*]. Plaintiff states Officer Gardner never returned to take a statement from him regarding the assault. [*Id.*]. Plaintiff saw the dentist the next day, May 7, and reported a pain and "clicking" in his jaw. [*Id.* at 13-14].[2]

---

[2] Plaintiff directs the Court to see attached medical records and requests to SID. [*Id.* at 13-14]. Other than Plaintiff's *in forma pauperis* application, no attachments to the complaint were docketed.

Plaintiff had an administrative hearing on May 27, 2016. [*Id.* at 14]. Plaintiff asserts that "[b]efore the hearing even started, [Plaintiff's] inmate paralegal advised that the Court line Hearing Officer Mrs. Ralph indicated her intent to find him guilty and sentence him to the maximum penalty allowed." [*Id.*]. Officer Ralph did not permit Plaintiff access to video footage or a polygraph examination. [*Id.*]. Plaintiff was found guilty of assault and refusing a search. [*Id.*]. Plaintiff alleges SID Officer Achinko permitted video footage that would have exonerated Plaintiff and proved Officers Robinson and Dougherty assaulted him to "loop." [*Id.* at 7 ¶ 6].

Plaintiff argues defendants are engaged in a conspiracy to deprive him of his rights and have subjected him to extortion, assault, retaliation, and false arrest or imprisonment. He alleges defendants have engaged in a "Blue Code" or "Blue Wall of silence" to protect each other from investigation or prosecution. He seeks damages in the amount of $1,500,000.

## III. STANDARD OF REVIEW

### A. Standards for a Sua Sponte Dismissal

Per the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental

employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 42 U.S.C. § 1997e. The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. § 1915 because Plaintiff is a prisoner proceeding *in forma pauperis*.[3]

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007) (following *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also United States v. Day*, 969 F.2d 39, 42 (3d Cir. 1992). According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive *sua sponte* screening for failure to state a claim,[4] the complaint must

---

[3] Although Plaintiff is no longer in custody, the screening provisions of the PLRA apply because he was confined in a state prison at the time the complaint was filed.

[4] "[T]he legal standard for dismissing a complaint for failure to state a claim . . . is identical to the legal standard employed in ruling on 12(b)(6) motions." *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)).

allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). Moreover, while *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted) (emphasis added).

**B. Section 1983**

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

§ 1983. Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second,

that the alleged deprivation was committed or caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

**IV. ANALYSIS**

**A. Eleventh Amendment**

Plaintiff brings claims against defendants in their individual and official capacities. The claims against defendants in their official capacities must be dismissed with prejudice as barred by the Eleventh Amendment.

The Eleventh Amendment to the United States Constitution provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. A suit against a public official "'in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . .'" *Printz v. United States*, 521 U.S. 898, 930–31 (1997) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). These claims are dismissed with prejudice. Claims against defendants in their <u>individual</u> capacities remain.

**B. Civil Rights Conspiracy Under § 1985**

Plaintiff alleges a civil rights conspiracy under 42 U.S.C. § 1985. [Docket Entry 1 ¶ 1(a)]. "Section 1985(3) permits an action to be brought by one injured by a conspiracy formed 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.'" *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006) (quoting 42 U.S.C. § 1985(3)). The Supreme Court has "emphasized that because § 1985(3) requires the 'intent to deprive of *equal* protection, or *equal* privileges and immunities,' a claimant must allege 'some racial, *or perhaps otherwise class-based*, invidiously discriminatory animus behind the conspirators' action' in order to state a claim." *Id.* at 135 (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)) (emphasis in original).

Plaintiff has alleged no racial or class-based animus behind the alleged conspiracy. His civil conspiracy claim under § 1985 is therefore dismissed without prejudice.

**C. *Monell* liability**

Plaintiff also argues liability exists under *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978). [Docket Entry 1 ¶ 1(a)]. Under *Monell*, municipalities may only be liable when the government itself supported a violation of

constitutional rights; it "cannot be held liable *solely* because it employs a tortfeasor — or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691 (emphasis in original).

Plaintiff does not name a municipal entity as a defendant, and there is no reasonable basis for the Court to construe the complaint as being against Cumberland County, the location of Bayside State Prison, because Bayside is not a county jail. Plaintiff has not alleged facts indicating there was an "affirmative proclamation of a policy or acquiescence in a well-settled custom" of a municipality that caused his injuries. *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990).[5] Plaintiff's *Monell* claim is dismissed without prejudice.

**D. Conspiracy - § 1983**

Plaintiff also alleges a conspiracy under § 1983 wherein defendants extorted him, retaliated against him, assaulted him, deprived him of due process, and covered-up the actions of other corrections officers. "To prevail on a conspiracy claim under §

---

[5] "Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict. Government custom can be demonstrated by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Kirkland v. DiLeo*, 581 F. App'x 111, 118 (3d Cir. 2014) (internal quotation marks and citations omitted) (alteration in original).

1983, a plaintiff must prove that persons acting under color of state law 'reached an understanding' to deprive him of his constitutional rights." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 293-94 (3d Cir. 2018).

After construing the complaint liberally and giving Plaintiff the benefit of all reasonable inferences, the Court will permit the § 1983 conspiracy claim to proceed. *See id.* at 294 ("A 'conspiracy of silence' among officers is actionable as a § 1983 conspiracy because the coordinated officer conduct 'impede[s] an individual's access to courts' and renders 'hollow' a victim's right to redress in a court of law. (quoting *Vasquez v. Hernandez*, 60 F.3d 325, 328-29 (7th Cir. 1995))).

## V. CONCLUSION

For the reasons stated above, the official capacity claims are dismissed with prejudice, and Plaintiff's § 1985 conspiracy and *Monell* claims are dismissed without prejudice. Plaintiff's conspiracy claim under § 1983 will proceed. An appropriate order follows.

| | |
|---|---|
| **March 21, 2019** | **s/ Jerome B. Simandle** |
| Date | JEROME B. SIMANDLE |
| | U.S. District Judge |